FIDELITY MUT. LIFE INS. CO. *v.* WALL *et al.*

(*Nashville,* December Term, 1933.)

Opinion filed Feb. 24, 1934.

TRUE & DORSEY, of Springfield, and METCALF, METCALF & APPERSON and JAMES J. PLEASANTS, JR., all of Memphis, for appellant.

JOHN E. GARNER, JAKE A. O'BRIEN, ERNEST C. RICHARD, and HARDIN H. CONN, all of Springfield, for petitioners.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

This is an action to foreclose a mortgage of real estate. The determinative question is whether the lien of the mortgage is barred by the statute of limitation of ten years. Code, section 8590.

On April 1, 1913, Moses M. Wall and wife executed a mortgage to the complainant, to secure the payment of a note for $8,000, for borrowed money, due April 1, 1918. Moses M. Wall died in 1922, a resident of Kentucky, where his estate was administered. The mortgage included lands, contiguous tracts, lying in Tennessee and Kentucky, and in 1927 complainant filed suit in Kentucky, against Wall's administrator and heirs, to foreclose the mortgage on the Kentucky lands, reserving its right to

proceed against the Tennessee lands included in the mortgage, if the debt should not be satisfied in that action. Application of all available proceeds left a balance of $1,913.08, whereupon this action was begun July 25, 1931.

The bill avers that Wall owned no personal property in Tennessee, and no personal judgment or decree is prayed against the heirs or estate. A domestic administrator was therefore not a necessary party to the bill. *Edwards* v. *Edwards*, 5 Heisk. (52 Tenn.), 123; *Aiken* v. *Suttle*, 4 Lea (72 Tenn.), 103, 127. Code, section 8610, limiting the time within which actions may be brought against "the personal representative of a decedent," is therefore not applicable.

More than ten years elapsed between the date of maturity of the debt described in the mortgage, April 1, 1918, and the date this suit was begun, July, 1931. Complainant insists, however, that its right to enforce the lien is preserved by a supplemental agreement executed by Wall on May 30, 1918. This agreement postponed the date of maturity of the orginal note to April 1, 1923, binding the maker to pay an increased rate of interest for the new term. It made particular and definite reference to the mortgage, by giving the book and page of its registration, and concluded with the following clause:

"The said party of the first part (the mortgagor) hereby covenants and agrees that the said mortgage shall continue and remain as security for the payment of the said note and interest as hereinbefore stated, and the said note and mortgage and all the covenants and conditions thereof shall remain in full force and effect except as modified by this agreement."

Complainant insists that the effect of this supplemental agreement is to postpone the maturity of the debt and mortgage until April 1, 1923, and that it had ten years from that date within which to begin an action to enforce the lien of the mortgage. The lien is extinguished by section 8590 of the Code, "unless suits to enforce it be brought within ten years from the maturity of the debt."

The controversy here is between the mortgagee and the heirs at law of the mortgagor. No intermediate parties or rights of innocent purchasers are involved. The question at issue is therefore whether the supplemental agreement was effective to renew or extend the original mortgage as between the parties themselves, so that the lien of the mortgage continued for ten years from the new date of maturity.

In determining this question, we are not able to attach any importance to the fact that the supplemental agreement was not put on record, nor probated by acknowledgment, so as to entitle it to be put on record. Acknowledgment would have added nothing to the instrument, as between the parties, and all instruments required by law to be acknowledged and registered are good as between the parties and their privies without acknowledgment or registration. *Wilkins* v. *McCorkle*, 112 Tenn., 688, 80 S. W., 834. References to registration of the renewal of a mortgage or deed of trust in *Runnells* v. *Jacobs*, 100 Tenn., 397, 400, 45 S. W., 980, and *Shanks* v. *Phillips*, 165 Tenn., 401, 55 S. W. (2d), 258, were made with regard to the effect of such renewals on the rights of purchasers without notice and creditors of the maker, and must be understood as so limited. Otherwise these cases would be clearly out of harmony with the many

cases, including *Wilkins* v. *McCorkle, supra,* in which the purpose, scope, and effect of the registration laws are elucidated.

The statutory limitation was construed in *Runnells* v. *Jacobs, supra,* as having for its purpose the quieting of titles. This purpose is accomplished by "the extinction of express liens, and denying any remedy to enforce the same, after the lapse of ten years from the time the original debt became matured." Accordingly, it was held in that case that "continued promises of payment and indulgence craved and granted both as to the debt, and the enforcement of the mortgage," within ten years from the commencement of suit, will not toll the statute. And in *Alexander* v. *Muse,* 112 Tenn., 233, 79 S. W., 117, 119, execution of a new note after the mortgage was barred, containing a reference to it as "still in force," was held not to extend the mortgage; the court saying that the mortgage cannot be extended "by merely referring to it in an independent paper as being still in force."

In *Bank* v. *Smith,* 107 Tenn., 476, 64 S. W., 756, the maker of a note to Ellett, secured by deed of trust on real estate, in order to avoid foreclosure by Ellett, induced a stranger to the original transaction, Mrs. Wheeless, to purchase the note. At the same time he executed a written instrument, reciting the facts of the transaction, acknowledging Mrs. Wheeless as his creditor and as the beneficiary of the deed of trust, and further providing that the land "shall stand as security" to her "to the same extent and effect as originally intended for the said note."

This instrument was not placed on record until after the expiration of ten years from the original maturity of the note, and was therefore not effective as against a

prior deed of trust, but the court ruled that it "was in law effective as a new conveyance from its date and delivery, as to the makers, and from its registration, the day after the commencement of this suit, as to all other persons." At the same time the court said that no language the maker of the deed of trust could have employed in the subsequent instrument "would have extended the life of that deed of trust, especially as against intermediate lienors, beyond the period of 10 years from the maturity of the Ellett note. The statute is plain, positive, and unyielding at this point."

 The meaning of these earlier cases is, we think, that the statute forbids the mere extension of the original mortgage or lien, but permits the limitation to be tolled by the execution of a subsequent instrument of sufficient import that it can be treated as a new mortgage or lien, executed and created, within the ten-year period, to take the place of, and stand in lieu of, the lien created in the original instrument. This the court said, in *Runnells* v. *Jacobs, supra,* in these words: "If the parties desire to extend the lien or mortgage beyond the 10 years, it can be done by executing a new mortgage, trust, or declaration of lien to be registered as was the original." This reference to registration we have discussed hereinabove.

 In determining whether the subsequent instrument is a mere extension of the original mortgage, not permissible under the cases cited, or the execution of a new mortgage and lien, the substance and not the form of the instrument must control, and, as between the parties and their privies, the primary consideration is to give effect to their intent as expressed by them. This follows from *Bank* v. *Smith, supra,* wherein the informal lan-

guage of the instrument executed to the purchaser of the original note was held to be effective in law as a new conveyance.

The instrument relied upon by the complainant in the case before us as tolling the statute was, in its necessary effect, a new mortgage. It witnessed the agreement of the parties to extend the time of payment of the original debt for a term of three years, and bound the maker to pay interest at the rate of six per cent. for the new term, instead of the five and one-half per cent. stipulated in the original note and mortgage. The maker then covenanted that the mortgage should continue and remain "as security for the payment of the said note and interest as hereinbefore stated," and that the said note "and mortgage" shall remain in full force and effect "except as modified by this agreement." The original mortgage secured only the payment of interest at the rate of five and one-half per cent. while the new instrument increased the sum of the obligation secured, by providing for additional interest. This was a new contract and a new and additional binding of the land included in the mortgage, and, under the cases cited, the lien thus created and renewed continued in force for ten years from the new maturity date expressed therein. Complainant's bill to enforce its lien for the balance due on its debt must therefore be sustained.

It is not necessary and we therefore express no opinion as to the effect of the instrument, if it had not contained the provision for increased interest.

By intervening petition, the court is asked to apply the balance of the proceeds of the land impounded, after satisfying complainant's debt, to the payment of a balance due the Kentucky administrator of Wall's estate,

as his compensation, and to the payment of the fee of the attorney employed by him in the administration of the estate in Kentucky, and of a fee of the attorney for the statutory guardian of the minor heirs in that proceeding. All of these claims were adjudged proper claims against the estate of Moses Wall by the circuit court of Logan county, Kentucky, but the estate in Kentucky, both real and personal, was exhausted without paying these claims.

The petition filed by these claimants avers only that it was necessary for the administrator "to file suit in Logan County, Kentucky, for the purpose of selling land for the payment of the debts of said estate and to bring about a proper and legal administration of same." There is no averment that the amount or justness of any debts was controverted, or that the claimants were called upon to render any services which inured to the benefit of the heirs at law of the intestate in Tennessee.

The heirs at law answered the petition making general and special denial of the right of the claimants to proceed against the land in this state. The chancellor sustained their plea of the statute of limitation embodied in Code, section 8610, extinguishing all rights of action "against the personal representative of a decedent, for demands against the decedent," if not brought within seven years after his death. We doubt the applicability of this section, since the claims were not "demands against the decedent," and accrued, if at all, by allowance of the circuit court of Logan county more than seven years after the decedent's death.

But we are of opinion that the petition of the claimants cannot be sustained, for other reasons.

██ ██ The real estate of a debtor is made subject to his just debts in this state by Code, section 8197. A general creditor of an estate may proceed against the real estate belonging to the debtor under Code, sections 8213, 8214; but in such proceeding an administrator or executor, qualified under the laws of this state, is a necessary party. *Hooker* v. *Peterson,* 140 Tenn., 280, 285, 204 S. W., 858, 859. ''Before the land can be sold it is necessary to have an accounting with the administrator.'' Petitioners are therefore not entitled to charge their claims against real estate in Tennessee in a suit to which only the heirs at law are parties. A Tennessee administrator is essential to that purpose.

██ A more fundamental reason for denying the petition is that there is no authority for charging land owned by the decedent in Tennessee with the expense of administering his estate in another jurisdiction. The statute subjecting lands to his just debts may not be so construed. The judgment rendered by the circuit court of Logan county, Kentucky, adjudged such expense against the estate of the decedent, but we construe that judgment to refer to the estate in Kentucky which was within the jurisdiction of the court and which was being administered. We find no cases on the point, perhaps because it is at least unusual for a probate court to allow administration expenses and fees in sums greater than the value of the estate being administered, subject to the payment of such charges.

The decree of the chancellor dismissing the intervening petition of the Kentucky administrator and attorneys is affirmed, for the reasons stated. The decree dismissing the original bill is reversed, and the case remanded for decree consistent with this opinion. The costs of the ap-

peal will be certified to the chancery court for payment out of the proceeds of the land impounded.

For convenience we have referred herein to the sections of the Code of 1932 instead of to corresponding sections of earlier statutes, not materially altered by the Code.