Osborne *v.* McCormack *et al.*

(*Nashville*, December Term, 1943.)

Opinion filed January 8, 1944.

Higgins & Lamb and Lawson H. Myers, all of Fayette-ville, and Harold Hayes, of Lynchburg, for complainant.

J. Roy Hickerson, of Winchester, for defendants.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This case originated in the County Court of Moore County where the chairman held in an insolvency proceeding that a note for $1,500 was a secured claim and a first lien on a house and lot in Lynchburg. The Court of Appeals affirmed the decree of the county court, and the only question here is whether this note constitutes a lien on said house and lot or whether it is an unsecured claim.

The defendants below, Mrs. Etna Motlow McCormack and Miss Aileene Motlow, on November 17, 1928, conveyed the real estate involved to Dr. J. D. McCord, the administrator's intestate, for $3,700, of which $1,000 was paid in cash and the remainder represented by two notes, one for $1,200 due six months after date and the other for $1,500 due twelve months after date, and to secure these two notes a vendor's lien was retained on the house and lot. The note for $1,200 was paid, and on November 7, 1935, a new note for $1,500 was executed by Dr. McCord, which shows on its face that it was for part of the purchase money for this real estate. The note given in renewal is as follows:

"$1500.00

"Twelve months after date I promise to pay to the order of Mrs. Etna McCormack and Aileen Motlow the sum of Fifteen hundred dollars, with 6% interest from maturity, for value received in a house and lot situated in the town of Lynchburg, Tennessee, on Poplar, Mechanic and Cemetery Streets. This is the second and last installment of purchase money for said property. A lien is retained on said property to secure payment of this note.

"This November 7, 1935.

"(Signed)        J. D. McCord, M. D."

The petitioner, Mrs. Mary Gentry, insists that she is prejudiced by the holding of the Court of Appeals as she is a general creditor whose claim is for $4,188, and to allow the note for $1,500 as a secured claim would greatly diminish her percentage of the house and lot, which brought $3,500; that there was no personal property of any consequence; and that the execution of the note for $1,500 did not toll the running of the ten-year statute of limitations, as was held by the Court of Appeals.

The Court of Appeals cites in support of its holding the case of *Milam* v. *Milam*, 138 Tenn., 686, at page 691, 200 S. W. 826, at page 827, where the Court said:

"An equitable lien, strictly speaking, is not a *jus in re* or a *jus ad rem*, but is the right to have the property subjected in a court of equity to the payment of the claim. It is a floating equity until action by the court is invoked.

" 'Even in the absence of an express contract, a lien, based upon the fundamental maxims of equity, may be implied and declared by a court of chancery out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings.' 17 R. C. L., p. 605; 3 Pomeroy, Eq. Juris., sections 1237, 1239; *Westall* v. *Wood*, 212 Mass., 540, 99 N. E,. 325."

The testimony in the county court was not preserved by a bill of exceptions. The Court of Appeals in its opinion said:

"In the absence of the testimony we must presume that the court found as a fact that it was the intention and purpose of the parties that the payees of this note should be protected by a lien upon this real estate and that the facts of this particular case justified the court in declaring such a lien to exist."

We think, however, the question involved can be determined on the record before us.

It is insisted on behalf of Mrs. Gentry, the petitioner, that the vendor's lien, whether regarded as an equitable lien or otherwise, was extinguished by the lapse of more than ten years without any effort to enforce the same by court action.

Section 8590 of the Code provides as follows:

"Liens on realty barred after ten years.—Liens on realty, equitable or retained in favor of vendor on the face of a deed, also liens of mortgages, deeds of trusts, and assignments of realty executed to secure debts, shall be barred, and the liens discharged, unless suits to enforce the same be brought within ten years from the maturity of the debt."

It is insisted that the action for the enforcement of the lien was not commenced within the ten-year period. It has been held that failure to resort to the courts for enforcement within the ten-year period not only barred the remedy but destroyed the lien preserved. *McElwee v. McElwee,* 97 Tenn., 649, 37 S. W., 560; *Alexander v. Muse,* 112 Tenn., 233, 79 S. W. 117.; *Fidelity Mut. Life Ins. Co. v. Wall,* 167 Tenn., 207, 68 S. W. (2d), 108.

The payees of the note, respondents here, insist that the wording of the renewal note has the effect of a new mortgage or trust deed, as was held in *Fidelity Mut. Life Ins. Co. v. Wall, supra,* where the Court said at page 213 of 167 Tenn., at page 110 of 68 S. W. (2d):

"In determining whether the subsequent instrument is a mere extension of the original mortgage, not permissible under the cases cited, or the execution of a new mortgage and lien, the substance and not the form of the instrument must control, and, as between the parties

and their privies, the primary consideration is to give effect to their intent as expressed by them.''

The Court further said at page 214 of 167 Tenn., at page 111 of 68 S. W. (2d):

''It is not necessary and we therefore express no opinion as to the effect of the instrument, if it had not contained the provision for increased interest.''

In *Shanks* v. *Phillips,* 165 Tenn., 401, 55 S. W. (2d), 258, in an opinion delivered by Mr. Justice CHAMBLISS, it was held that where the hold of a senior mortgage discharges it of record within the ten-year period and contemporaneously takes and registers a new mortgage securing his unpaid debt, the renewal mortgage has priority over a vendor's lien which was subordinate to the original mortgage. It was further held that the statute does not prevent a renewal of a lien by agreement of the parties made and registered prior to the expiration of the ten-year period. It was also held that the bar of the statute prevents an effectual extension or renewal of a lien by an unregistered instrument.

The Court held in *Fidelity Mut. Life Ins. Co.* v. *Wall, supra,* that a lien could be preserved by an unregistered instrument having the dignity of a new mortgage *as between the parties*; but in the instant case to give effect to the instrument in question as a mortgage would prejudice the claim of Mrs. Gentry, a creditor in the insolvency proceeding, and to hold that respondents are entitled to an equitable lien as against Mrs. Gentry would defeat the purpose of section 8590 of the Code. It should be noted that the Court was careful to distinguish between an extension of a lien and a new mortgage.

In *McElwee* v. *McElwee, supra,* and *Alexander* v. *Muse, supra,* and other decisions in line with them, the Court held that the *extension* could not be made for a longer

time than the ten-year period provided by section 8590 of the Code, and to preserve the lien a new recorded instrument must be executed.

So, under the holding in the Wall case, even if the note for $1,500 is treated as an unrecorded new mortgage, which may well be doubted, still it is ineffectual as against an aggrieved creditor who is a third party.

It results that the decrees of the Court of Appeals and the Chancery Court of Moore County will be reversed and the case remanded for further proceedings.